UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DR. GERALD R. FINKEL, as Chairman of the Joint Industry Board of the Electrical Industry,

                      Petitioner,

-against-

LINTECH ELECTRICAL, INC.,

                      Respondent.

18 CV _____

**PETITION TO CONFIRM AN <u>ARBITRATION AWARD</u>**

Petitioner, Dr. Gerald R. Finkel, as Chairman of the Joint Industry Board of the Electrical Industry ("Petitioner" and/or the "Funds") by and through their attorneys, Virginia & Ambinder, LLP ("V&A"), as and for their Petition to Confirm an Arbitration Award, respectfully allege as follows:

## NATURE OF THE ACTION

1. This is an action under section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(3); section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185, to confirm and enforce an Arbitrator's Award rendered pursuant to a collective bargaining agreement (the "CBA") between the Local Union #3 of the International Brotherhood of Electrical Workers ("Union") and Lintech Electrical, Inc. ("Respondent").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, and 29 U.S.C. §§ 185 and 1132(e)(1).

3. Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) because the ERISA Funds (as defined below) are administered in this district.

## THE PARTIES

4. The Plaintiff is the Chairman of the Joint Industry Board, the administrator of various employee benefit multi-employer plans established and maintained pursuant to a collective bargaining agreement between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO, and certain employer associations and independent or unaffiliated employers in the electrical and other related industries. The Joint Industry Board maintains its principal place of business at 158-11 Harry Van Arsdale Jr. Avenue, Flushing, New York 11365.

5. The Joint Industry Board ("JIB") is the administrator and fiduciary within the meaning of §§ 3(16)(A)(i) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A)(i) and 1002(21)(A), of each of the following employee benefit plans: the Pension, Hospitalization and Benefit Plan of the Electrical Industry, the Dental Benefit Fund of the Electrical Industry, the Educational and Cultural Trust Fund of the Electrical Industry, the Annuity Plan of the Electrical Industry, and the Health Reimbursement Account Plan of the Electrical Industry, the Deferred Salary Plan of the Electrical Industry (the "DSP"), and the Joint Apprenticeship and Training Program (the "JATP"), and the National Electrical Benefit Plan ("NEBF")(collectively the "ERISA Plans").

6. Per the operative collective bargaining agreement, the JIB receives directly from each signatory employer a weekly remittance consisting of contributions to each of the ERISA Plans, except the DSP, as well as a Union assessment collected by the signatory employer from each Union member employed (the "Union Assessment"). The JIB acts as a mere collection agent with respect to the Union Assessment and NEBF contribution.

7. Each of the ERISA Plans is an employee benefit multiemployer plan within the meaning of §3(3) of ERISA, 29 U.S.C. 1002(3), and a multi-employer plan within the meaning of 3(37) of ERISA, 29 U.S.C. § 1002(37). Each of the ERISA Plans is also jointly administered by a board of trustees that is comprised of labor and management representatives who share equal representation in the administration of the Plans in accordance with 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).

8. The DSP is also a tax-qualified profit-sharing plan with a cash or deferred arrangement within the meaning of 401(k) of the Internal Revenue Code (the "Code"). Pursuant to the operative collective bargaining agreement, employers are required to deduct a specified percentage from the weekly wages of each eligible employee covered by the operative collective bargaining agreement and to remit such amounts, plus any additional salary deferrals made at the election of the employee together, "Employee Contributions") to the DSP, along with related payroll reports. The Employee Contributions are employee-elective contributions, which, but for the salary deferrals, would have been paid to the employees as wages. Employers are also required to remit employer contributions to the DSP on behalf of all covered employees ("Employer Contributions"), in addition to the Employee Contributions and without regard to any election by the employees.

9. Pursuant to the CBA, the JIB may also collect employee loan payments due to the Union and certain Plans, and contributions to fund the operations of the JIB (collectively, the "Non-ERISA Plans"). Together, the loan payments, and the amounts owed to the Non-ERISA Plans are referred to as the "Non-ERISA Contributions."

10. Employee loan repayments may also be deducted from employees' paychecks. The E&C Fund is authorized to make loans to employees, for the purpose of paying for college tuition

of a child of an employee, and the employees repay the amount of the loan by authorizing deductions from their paychecks.

11. The Employee Contributions and the Employer Contributions to the DSP are hereafter collectively referred to as "DSP Contributions." Employers are required to send all DSP Contributions and related payroll data to the DSP in care of Prudential Financial, Inc. ("Prudential"), the third-party record-keeper and investment manager retained by the JIB for such purposes. All DSP Contributions are allocated to individual accounts in the name of the covered employees, who are entitled to direct the investment of their DSP Contributions from among various investment alternatives selected by the JIB in conjunction with Prudential.

12. The signatory employer contributions to each of the ERISA Plans, except the DSP, the Union Assessment remittances, and the Non-ERISA Plan Contributions are collectively referred to as the "JIB Contributions." The JIB Contributions together with the DSP Contributions are hereafter collectively referred to as the "Required Contributions."

13. Respondent is a corporation incorporated under the laws of the State of New York. At relevant times, Respondent was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. Respondent maintains its principal place of business at 3006 Nostrand Avenue, Brooklyn, New York 11226.

## THE ARBITRATION AWARD

14. Respondent entered into a project labor agreement with the Union pursuant to which Respondent agreed to be bound by the terms of the collective bargaining agreement between the Union and the New York Electrical Contractor's Association, Inc. and the Association of

Electrical Contractors, Inc. A copy of the Respondent's signature page is annexed hereto as **Exhibit A**.

15. Pursuant to the project labor agreement, Respondent agreed to be bound to the May 11, 2016 through April 10, 2019 ("2016-19 CBA") collective bargaining agreement. A copy of the 2016-19 CBA is annexed hereto as **Exhibit B**.

16. The CBA requires Respondent, *inter alia*, to make Required Contributions to the ERISA Plans, the Non-ERISA Plans, and to the Union for all work within the trade and geographical jurisdiction of the Union and to submit weekly payroll reports that provide the name, gross wages, and hours worked for each worker employed by the company on whose behalf Required Contributions are made. *See* Exhibit B, Article II, Sections 3-9.

17. The CBAs provides, *inter alia*, that "the parties to this Agreement hereby agree to and shall be bound by the provisions of the Plan and Trust documents established and maintained for purposes of implementing the benefits provided for in this Agreement…including the delinquency and collection procedures of the Plan and the requirements of ERISA." Exhibit B, Article II, Section 12 (a).

18. The CBAs further provides that an employer "shall be liable for the remedies under Section 502(g)(2) of ERISA, including liquidated damages in an amount not in excess of 20%, in the event of entry of judgment against the Employer in an action to collect delinquent contributions. *Id.*

19. The JIB established a Policy for the Collection of Delinquent Contributions ("Collection Policy"). A copy of the Collection Policy is annexed hereto as **Exhibit C**.

20. The JIB also established Arbitration Procedures and Rules Governing Employer Delinquency Disputes and Audits ("Arbitration Procedures"). A copy of the Arbitration Procedures is annexed hereto as **Exhibit D**.

21. Pursuant to the Collection Policy, the JIB is authorized to conduct an audit of a signatory employer's books and records in order to verify the accuracy of the employer's Required Contributions. *See* Exhibit C, Article I.6.

22. The Collection Policy provides that if an employer fails to remit contributions and has not submitted payroll reports for such unpaid contributions, the JIB may "use a prior week's payroll report submitted by the employer to calculate the amount of Contributions due from the employer." Exhibit C, Article II.F.1.

23. Pursuant to the Collection Policy, interest on delinquent contributions is to be calculated at the rate set forth in Section 6621 of the Internal Revenue Code for all ERISA Plan, except the NEBF which has adopted a 10% interest rate. *See* Exhibit C, Article II.E.1.

24. The Collection Policy further provides that, an employer shall be liable for liquidated damages and attorneys' fees and costs if legal action is commenced. *See* Exhibit C, Article II.E.2.

25. The Arbitration Procedures provide that the arbitrator shall have the jurisdiction to determine any disputes between the "JIB against an Employer, related to the Employer's obligation to contribute to the Funds, including but not limited to Audits, Delinquencies, interest, liquidated damages, and attorneys' fees and costs…". Exhibit D, Section I.K and II.A.

26. The Arbitration Procedures further provide that if the arbitrator finds in whole or in part for the JIB, the employer shall be liable for the arbitrator's fees and attorneys' fees and costs. Exhibit D, Section X.

27. The Funds conducted an audit of the Respondents books and records covering the period August 31, 2016 through September 30, 2017 ("2016-17 Audit").

28. The audit contains a principal deficiency of $11,353.40. *See supra* Exhibit F, at ¶¶ 26-29.

29. A dispute arose between the parties when Respondent failed to remit: (1) JIB Contributions for payroll weeks ending June 13, 2018 through August 15, 2018; (2) DSP Contributions for payroll weeks ending June 6, 2018 through July 11, 2018; (3) weekly payroll reports detailing the number of hours worked by its employees and JIB Contributions owed for the payroll weeks ending August 22, 2018 through August 29, 2018; and (4) weekly payroll reports detailing the number of hours worked by its employees and DSP Contributions owed for the payroll weeks ending July 18, 2018 through August 29, 2018. *See supra* Exhibit F, at ¶¶ 19-20.

30. A further dispute arose between the parties when Respondent failed to remit the findings for 2016-17 Audit. *See supra* Exhibit F, at ¶ 26.

31. Pursuant to the Collection Policy and Arbitration Procedures, Petitioners initiated arbitration before the designated arbitrator, Thomas J. Lilly, Jr., Esq. Petitioners noticed said arbitration by mailing a Notice of Intent to Arbitrate with Statement of Claims by UPS overnight mail. A copy of the Notice of Intent to Arbitrate and Statement of Claims are annexed hereto as **Exhibit E** and **Exhibit F**, respectively.

32. As per the Arbitration Procedures, five days prior to the arbitration hearing, Petitioners served Respondent, via UPS overnight mail, with a copy of Petitioner's Prehearing Memorandum of Law. *See* Exhibit D, Section IX.A. A copy of the Prehearing Memorandum of Law is annexed hereto as **Exhibit G**.

33. The arbitrator held a hearing on November 6, 2018.

34. At the hearing, Petitioners presented evidence that Respondent owed: (1) JIB Contributions for payroll weeks ending September 26, 2018 through October 24, 2018 of $9,575.28; (2) estimated JIB Contributions for payroll weeks ending October 31, 2018 of $1,439.36; (3) DSP Contributions for payroll weeks ending June 6, 2018 through July 18, 2018 and September 26, 2018 through October 17, 2017 of $40,482.88; (4) estimated DSP Contributions for payroll weeks ending October 24, 2018 through October 31, 2018 of $1,749.42; (5) the 2016-17 Audit deficiency of $22,640.20; and (6) shortages for payroll weeks 20-25, 27-28, and 30-31 of 2018 in the amount of $697.14. A copy of the Funds breakdown of benefits owed submitted at the arbitration is annexed hereto as **Exhibit H**.

35. Thereafter, the arbitrator rendered his award, in writing, dated September 17, 2018, determining said dispute (the "Award"). A copy of the Award was delivered to Respondent. A copy of the Award is annexed hereto as **Exhibit I**.

36. The arbitrator found that Respondent was in violation of the terms of the CBA and ordered Respondent to pay the Funds the sum of $96,721.04 consisting of (1) required contributions of $53,248.94; (2) interest of $1,267.50; (3) audit deficiencies of $22,640.20; (4) shortages or underpayments of $697.14; (4) liquidated damages at a rate of 20% of $15,317.26; (5) attorneys' fees and costs of $2,150; and (6) the arbitrators' fees of $1,400.

37. Respondent has failed to abide by the Award.

38. The Award has not been vacated or modified and no application for such relief is currently pending.

39. This petition is timely as it was filed within the one-year statute of limitations applicable to a petition to confirm an arbitrator's award.

40. Petitioners are entitled to the reasonable attorneys' fees and costs expended in this matter pursuant to the Award and Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

41. Copies of V&A's contemporaneous time records, reflecting all time spent and all activities performed in the prosecution of this matter by its attorneys and staff, are annexed hereto as **Exhibit J**.

42. I, Nicole Marimon ("NM" in the accompanying billing records), am a 2014 graduate of Fordham University School of Law, and an associate at V&A. Since graduating law school and being admitted to the New York State bar, I have handled the prosecution of numerous ERISA collections actions. V&A billed my time at a rate of $275 per hour for work performed in connection with this action.

43. V&A billed the legal assistants' time at a rate of $120 per hour for work performed in connection with this action.

44. In my experience, the foregoing hourly rates are similar to or lower than the rates typically charged by attorneys of commensurate skill and experience in similar actions in the Southern and Eastern Districts of New York.

45. V&A's total billings in this matter amount to $833.50 reflecting 3.2 hours of work. *See* Exhibit I.

46. In addition, V&A will also advance $475 in court filing fees and service charges upon the filing of the instant petition.

47. Accordingly, Petitioners are entitled to recover $1,308.50 in attorneys' fees and costs incurred in connection with this matter.

**WHEREFORE,** Petitioners respectfully request that this Court:

1. Confirm the Award in all respects;

2. Award judgment in favor of Petitioners and against Respondent in the amount of $96,721.04 pursuant to the Award plus interest from the date of the Award through the date of judgment;

3. Award judgment in favor of the Petitioners and against Respondent in the amount of $1,308.50 attorneys' fees and costs arising out of this petition; and

4. Award Petitioners such other and further relief as is just and proper.

Dated: New York, New York  
       December 3, 2018

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**

By: \_\_\_/s/_____  
Charles R. Virginia  
Nicole Marimon  
40 Broad Street 7th Floor  
New York, New York 10004  
Telephone: (212) 943-9080  
Fax: (212) 943-9082  
*Attorneys for Petitioners*