UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

GERALD R. FINKEL, *as chairman of the Joint Industry Board of the Electrical Industry*,

        Petitioner,

v.

LINTECH ELECTRICAL, INC.,

        Respondent.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**
18-CV-6865 (MKB)

MARGO K. BRODIE, United States District Judge:

  Petitioner Gerald R. Finkel, chairman of the Joint Industry Board of the Electrical Industry, filed the above-captioned petition on December 3, 2018, to confirm an arbitration award against Respondent Lintech Electrical, Inc. (Pet. to Confirm Arb. Award ("Pet."), Docket Entry No. 1; Pet. Mem. in Supp. of Mot. to Confirm Arb. Award ("Pet. Mot."), Docket Entry No. 4.) Petitioner alleges that Respondent failed to remit required contributions to certain employee benefit plans pursuant to collective bargaining agreements, section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(3), and section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185. (Pet. ¶ 1.) On January 22, 2020, the Court granted Petitioner's request to deem the petition an unopposed motion for summary judgment. (Order dated Jan. 22, 2020; Letter dated Jan. 14, 2019, Docket Entry No. 9.)

  For the reasons set forth below, the Court grants Petitioner's motion to confirm the arbitration award in the amount of $96,721.04, plus interest accrued until entry of judgment, and

awards Petitioner $752 in attorneys' fees and $475 in costs for a total damages award of $97,948.04 plus accrued interest.

## I. Background

Petitioner is the chairman of the Joint Industry Board (the "JIB") located in Flushing, New York. (Pet. ¶ 4.) The JIB is "the administrator of various employee benefit multi-employer plans, [including ERISA Plans,[1]] established and maintained pursuant to a collective bargaining agreement between Local Union No. 3 of the International Brotherhood of Electrical Workers" (the "Union"), the American Federation of Labor and Congress of Industrial Organizations (the "AFL-CIO"), and certain other employers and employer associations. (*Id.*) "Per the . . . collective bargaining agreement, the JIB receives directly from each signatory employer a weekly remittance consisting of contributions to each of the ERISA Plans, except the DSP,[2] as

---

[1] The JIB "is the administrator and fiduciary within the meaning of . . . 29 U.S.C. §§ 1002(16)(A)(i) and 1002(21)(A)" of certain employee benefit plans, including:
> the Pension, Hospitalization and Benefit Plan of the Electrical Industry, the Dental Benefit Fund of the Electrical Industry, the Educational and Cultural Trust Fund of the Electrical Industry, the Annuity Plan of the Electrical Industry, . . . the Health Reimbursement Account Plan of the Electrical Industry, the Deferred Salary Plan of the Electrical Industry (the "DSP"), . . . the Joint Apprenticeship and Training Program . . . , and the National Electrical Benefit Plan ("NEBF") (collectively the "ERISA Plans").

(Pet. ¶ 5.) "Each of the ERISA Plans is an employee benefit multiemployer plan within the meaning of" 29 U.S.C. §§ 1002(3) and 1002(37) and "is also jointly administered by a board of trustees that is comprised of labor and management representatives who share equal representation in the administration of the [p]lans in accordance with . . . 29 U.S.C. § 186(c)(5)." (*Id.* ¶ 7.)

[2] "The DSP is . . . a tax-qualified profit-sharing plan with a cash or deferred arrangement within the meaning of 401(k) of the Internal Revenue Code." (*Id.* ¶ 8.)

2

well as a Union assessment collected by the signatory employer from each Union member employed (the "Union Assessment").[3] (*Id.* ¶ 6.)

On April 20, 2017, "Respondent entered into a project labor agreement with the Union pursuant to which Respondent agreed to be bound by the terms of the collective bargaining agreement between the Union and the New York Electrical Contractor's Association, Inc., and the Association of Electrical Contractors, Inc." (*Id.* ¶ 14; Resp't Signature Page, annexed to Pet. as Ex. 1, Docket Entry No. 1-1.) Pursuant to the project labor agreement, Respondent agreed to be bound to the May 11, 2016 through April 10, 2019 . . . collective bargaining agreement" (the "2016–2019 CBA"). (Pet. ¶ 15.)

"The [2016–2019 CBA] requires Respondent . . . to make [r]equired [c]ontributions to the ERISA Plans, the Non-ERISA Plans, and to the Union for all work within the trade and geographical jurisdiction of the Union" and "to submit weekly payroll reports that provide the name, gross wages, and hours worked for each worker employed by the company on whose behalf [r]equired [c]ontributions are made." (*Id.* ¶ 16.) The 2016–2019 CBA further provides that (1) "the parties . . . agree to . . . be bound by the . . . delinquency and collection procedures of the [p]lan and the requirements of ERISA" and that (2) "an employer 'shall be liable for the remedies under [s]ection 502(g)(2) of ERISA, including liquidated damages . . . , in the event of entry of judgment against the [e]mployer in an action to collect delinquent contributions.'" (*Id.* ¶¶ 17–18.)

---

[3] "The JIB acts as a . . . collection agent with respect to the Union Assessment and NEBF contribution." (*Id.* ¶ 6.) "[T]he JIB may also collect employee loan payments due to the Union and certain [p]lans, and contributions to fund the operations of the JIB (collectively, the 'Non-ERISA Plans')." (*Id.* ¶ 9.)

The JIB established (1) a "Policy for the Collection of Delinquent Contributions" (the "Collection Policy") and (2) "Arbitration Procedures and Rules Governing Employer Delinquency Disputes and Audits" (the "Arbitration Procedures"). (*Id.* ¶¶ 19–20.) "Pursuant to the Collection Policy, the JIB is authorized to conduct an audit of a signatory employer's books and records in order to verify the accuracy of the employer's [r]equired [c]ontributions." (*Id.* ¶ 21.) The Collection Policy also provides that "an employer shall be liable for liquidated damages and attorneys' fees and costs if legal action is commenced." (*Id.* ¶ 24.) "The Arbitration Procedures provide that the arbitrator shall have the jurisdiction to determine any disputes between the 'JIB against an [employer] related to the [e]mployer's obligation to contribute to the Funds, including but not limited to [a]udits, [d]elinquencies, interest, liquidated damages, and attorneys' fees and costs,'" (*id.* ¶ 25), and that "if the arbitrator finds in whole or in part for the JIB, the employer shall be liable for the arbitrator's fees and attorneys' fees and costs," (*id.* ¶ 26).

Petitioner conducted an audit of "Respondent['s] books and records covering the period August 31, 2016 through September 30, 2017" (the "Audit"), which revealed "a principal deficiency of $11,353.40." (*Id.* ¶¶ 27–28.) Respondent failed to remit JIB and DSP contributions for certain payroll weeks in 2018, weekly payroll reports detailing the number of hours worked by its employees, and findings from the Audit. (*Id.* ¶¶ 29–30.) "Pursuant to the Collection Policy and Arbitration Procedures, Petitioner[] initiated arbitration before . . . Thomas J. Lilly, Jr., Esq." (*Id.* ¶ 31.) Petitioner provided notice to Respondent "by mailing a Notice of Intent to Arbitrate with Statement of Claims by [United Parcel Service ("UPS") via] overnight mail" and mailing a copy of Petitioner's Prehearing Memorandum of Law "five days prior to the arbitration hearing" via UPS overnight mail. (*Id.* ¶¶ 31–32.)

On November 6, 2018, the arbitrator held an arbitration hearing.[4] (*Id.* ¶ 33.) On September 17, 2018, the arbitrator "found that Respondent was in violation of the terms of the [2016–2019 CBA] and ordered Respondent to pay . . . the sum of $96,721.04," which consists of "(1) required contributions of $53,248.94; (2) interest of $1,267.50; (3) audit deficiencies of $22,640.20; (4) shortages or underpayments of $697.14; (4) liquidated damages at a rate of [twenty percent] of $15,317.26; (5) attorneys' fees and costs of $2,150; and (6) the arbitrators' fees of $1,400." (*Id.* ¶¶ 35–36.) To date, "Respondent has failed to abide by the [arbitration award]." (*Id.* ¶ 37.)

Petitioner timely petitions the Court to (1) confirm the arbitrator's award and award Petitioner $96,721.04 plus interest from the date of the arbitrator's award through the date of judgment and (2) award $833.50 in attorneys' fees and $475 in costs arising out of this petition. (*Id.* ¶¶ 39–40, 47.)

## II. Discussion

### a. Standard of review

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, there is "a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default,

---

[4] At the arbitration hearing, Petitioner presented evidence that Respondent owed: (1) JIB Contributions for payroll weeks ending September 26, 2018 through October 24, 2018 of $9,575.28; (2) estimated JIB Contributions for payroll weeks ending October 31, 2018 of $1,439.36; (3) DSP Contributions for payroll weeks ending June 6, 2018 through July 18, 2018 and September 26, 2018 through October 17, 2017 of $40,482.88; (4) estimated DSP Contributions for payroll weeks ending October 24, 2018 through October 31, 2018 of $1,749.42; (5) the [Audit] deficiency of $22,640.20; and (6) shortages for payroll weeks 20–25, 27–28, and 30–31 of 2018 in the amount of $697.14.

(*Id.* ¶ 34.)

5

and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). The Second Circuit has held that Rule 55 does not provide the appropriate mechanism for considering a petition to confirm an arbitration award, particularly where the non-appearing party appeared in the underlying arbitration proceeding. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107–08, 109 (2d Cir. 2006) ("Rule 55 does not operate well in the context of a motion to confirm or vacate an arbitration award."); *Laundry, Dry Cleaning Workers & Allied Indus. Health Fund, Unite Here! v. Jung Sun Laundry Grp. Corp.*, No. 08-CV-2771, 2009 WL 704723, at *3–4 (E.D.N.Y. Mar. 16, 2009) ("The Second Circuit has held that default judgments are generally inappropriate in proceedings to confirm an arbitration award.").

When a motion to confirm an arbitration award is accompanied by a record, "the petition and accompanying record should [be] treated as akin to a motion for summary judgment based on the movant's submissions." *D.H. Blair & Co.*, 462 F.3d at 109. Where a motion for summary judgment is unopposed, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001). "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) (citing *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)). "In doing so, the court may rely on other evidence in the record even if uncited." *Id.* (citing Fed. R. Civ. P. 56(c)(3)).

Although a summary judgment standard is applied to arbitration confirmation

proceedings, "[a] federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential — indeed, among the most deferential in the law." *A&A Maint. Enter., Inc. v. Ramnarain*, --- F.3d ---, ---, 2020 WL 7379100, at *3 (2d Cir. Dec. 16, 2020) (per curiam) (quoting *N.Y.C. & Vicinity Dist. Council of the United Bhd. of Carpenters & Joiners of Am. v. Ass'n of Wall-Ceiling & Carpentry Indus.*, 826 F.3d 611, 618 (2d Cir. 2016)). "[C]onfirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court,' and the court 'must grant' the award 'unless the award is vacated, modified, or corrected.'" *D.H. Blair & Co.*, 462 F.3d at 110 (first quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984); and then quoting 9 U.S.C. § 9); *see also Trs. of Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund, & Training Program Fund v. A.J.S. Project Mgmt., Inc.*, No. 19-CV-711, 2020 WL 6546212, at *2 (S.D.N.Y. Nov. 6, 2020) (quoting *D.H. Blair & Co.*, 462 F.3d at 109). "The arbitrator's rationale for an award need not be explained, . . . [o]nly 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." *D.H. Blair & Co.*, 462 F.3d at 110 (quoting *Landy Michaels Realty Corp. v. Loc. 32B–32J, Service Employees Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)). Accordingly, "courts 'play only a limited role when asked to review the decision of an arbitrator.'" *Tully Constr. Co. v. Canam Steel Corp.*, 684 F. App'x 24, 26 (2d Cir. 2017) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)).

  **b. The arbitration award**

  Petitioner argues that confirmation of the arbitration award is warranted because (1) Respondent is bound to the 2016–2019 CBA, which "binds Respondent to the Collection Policy and Arbitration Procedures"; (2) Respondent failed to remit contributions, the Audit

deficiencies, and payroll shortages, which authorized Petitioner to initiate arbitration; and (3) "the independent arbitrator acted within the scope of his authority in issuing the arbitration award" in the amount of $96,721.04. (Pet. Mot. 3.) Petitioner asserts that "the arbitrator [properly] ordered Respondent to pay [Petitioner] a principal sum of delinquent contributions, as well as interest thereon, liquidated damages, [and attorneys'] fees," pursuant to the 2016–2019 CBA, Collection Policy, and Arbitration Procedures. (*Id.* at 4.) Petitioner states that the arbitration award "has not been vacated, modified, or corrected." (*Id.*)

Because Petitioner's motion to confirm the arbitration award is accompanied by the 2016–2019 CBA, the Collection Policy, the Arbitration Procedures, the Notice of Intent to Arbitrate, the Statement of Claims, the Prehearing Memorandum of Law, a breakdown of benefits owed submitted at the arbitration, and the arbitrator's award, there is sufficient record for the Court to deem Petitioner's application as an unopposed motion for summary judgment. *See Trs. of the NYC Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Bilt NYG, Inc.*, No. 20-CV-3846, 2020 WL 7211184, at *3 (S.D.N.Y. Nov. 19, 2020) (treating the petition as an unopposed motion for summary judgment where the petitioners "submitted undisputed evidence showing that the arbitrator was acting within the scope of his authority, and that the arbitration award was appropriate in this case"), *report and recommendation adopted*, 2020 WL 7183549 (S.D.N.Y. Dec. 7, 2020).

The arbitration award has, at a minimum, "a barely colorable justification." *D.H. Blair & Co.*, 462 F.3d at 110. Respondent testified at the arbitration hearing, Respondent did not contest the amounts owed or submit evidence rebutting Petitioner's documents, and the arbitrator's decision addressed the issues presented. (Arbitrator's Op. and Award 2, 6, annexed to Pet. as Ex.

9, Docket Entry No. 1-9); *see Langford v. Beck*, No. 20-CV-4980, 2020 WL 6292637, at *2 (S.D.N.Y. Oct. 27, 2020) (confirming award where there was "no genuine dispute as to any material fact" based on the material submitted (quoting Fed. R. Civ. P. 56(a))); *Trs. of the Dist. Council No. 9 Painting Indus. Ins. Fund v. Sahara Constr. Corp.*, No. 20-CV-4501, 2020 WL 6130673, at *3 (S.D.N.Y. Oct. 16, 2020) (confirming arbitration award where the violations stemmed from a collective bargaining agreement and the respondent failed to refute the petitioner's reports during the arbitration hearing).

In addition, the 2016–2019 CBA, Collection Policy, and Arbitration Procedures provide for the remedies awarded by the arbitrator.  (Pet. ¶¶ 19–20; Arbitrator's Op. and Award 1–6); *see Bilt NYG, Inc.*, 2020 WL 7211184, at *3 (confirming arbitration award where "the amount and categories of damages awarded by the arbitrator correspond generally to those contemplated in the [collective bargaining agreement] and employer contribution policy — including principal and liquidated damages, interest, and [attorneys'] fees and costs").  The arbitrator's award reflects a considered judgment and there is no genuine dispute of material fact.

For the reasons stated above, the Court grants Petitioner's motion to confirm the arbitration award in the amount of $96,721.04, plus interest accrued until entry of judgment.  *See Latronica v. Loc. 1430 Int'l Bhd. of Elec. Workers Pension Fund*, 820 F. App'x 12, 14 (2d Cir. 2020) (affirming district court's grant of prejudgment interest in ERISA case); *Intercounty Paving Assocs. of N.Y., LLC*, 2020 WL 6826197, at *5 (awarding prejudgment interest on unpaid ERISA and non-ERISA contributions); *A.J.S. Project Mgmt., Inc.*, 2020 WL 6546212, at *8 (awarding prejudgment interest in ERISA case).

### c. Attorneys' fees

Petitioner requests $833.50 in attorneys' fees. (Pet. Mot. 7.) Petitioner asserts that "Respondent is liable for the reasonable attorneys' fees and costs incurred by Petitioner[] in prosecuting this matter" pursuant to 29 U.S.C. § 1132(g), and Petitioner's requested fees are reasonable. (*Id.*) Petitioner also asserts that his counsel billed "for the services of associate attorneys at the rate of $275 per hour," rates which "were negotiated with a Board of Trustees consisting of members with long business and negotiation experience and [which], as such, should be viewed as rates that a reasonable client would pay." (*Id.* at 6.) Petitioner also asserts that "these rates are within the reasonable range for attorneys representing ERISA benefit funds within the Southern and Eastern Districts of New York." (*Id.*)

A district court must award attorneys' fees and costs in a successful ERISA action that results in judgment in favor of the plan. *See* 29 U.S.C. § 1132(g)(2)(D); *Labarbera v. Clestra Hauserman, Inc.*, 369 F.3d 225, 226 (2d Cir. 2004) ("[When] the ERISA plan receives a judgment in its favor . . . the statute renders fees and costs mandatory: 'the court shall award the plan' reasonable fees and costs." (quoting 29 U.S.C. § 1132(g)(2))). In deciding what fees are due to a petitioner's attorney, courts must consider "what a reasonable client would be willing to pay to determine the 'presumptively reasonable fee.'" *Trs. of Loc. 813 Ins. Tr. Fund v. Bradley Funeral Serv., Inc.*, No. 11-CV-2885, 2012 WL 3871759, at *5 (E.D.N.Y. Aug. 10, 2012) (quoting *Masino v. Columbus Constr. Corp.*, No. 08-CV-1592, 2009 WL 2566956, at *6 (E.D.N.Y. Aug. 19, 2009)), *report and recommendation adopted*, 2012 WL 3871755 (E.D.N.Y. Sept. 4, 2012); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2007), *as amended*, 522 F.3d 182 (2d Cir. 2008). To calculate the amount of a "presumptively reasonable fee," the court multiplies a reasonable hourly rate by the

number of hours reasonably expended on the matter.  *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (explaining the "substance of" the traditional lodestar approach and a twelve-factor "reasonableness" approach to determining fees, which informed the "presumptively reasonable fee" test).  When determining whether the presumptively reasonable fee is ultimately reasonable, a court must "bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney[s'] fees."[5]  *Id.* (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 493 F.3d 110, 117 (2d Cir. 2007), *as amended*, 522 F.3d 182 (2d Cir. 2008)).  In what has become known as the "forum rule," courts assess the reasonableness of hourly rates by comparing the rates requested with the

---

[5]  The Second Circuit has identified a number of variables to guide the inquiry as to what constitutes a reasonable fee, including:
> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Finkel v. Rico Elec., Inc.*, No. 11-CV-4232, 2012 WL 6569779, at *12–14 (E.D.N.Y. Oct. 1, 2012), *report and recommendation adopted*, 2012 WL 6561270 (E.D.N.Y. Dec. 17, 2020) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 186 n.3).  In addition, courts are also instructed to evaluate "the complexity and difficulty of the case," the availability and expertise of the client's other counsel, the resources necessary to effectively litigate the case, "the timing demands of the case," the attorney's interest in achieving the ends of the litigation, whether the attorney may have initially acted *pro bono*, and other returns the attorney may expect from representation.  *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 184.  While the traditional "lodestar" method, which does not consider the above factors, has "achieved dominance in the federal courts," courts in this Circuit continue to take the *Arbor Hill* factors into consideration when determining what constitutes a reasonable fee.  *Finkel*, 2012 WL 6569779, at *13 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550–51 (2010)).  In any event, determining the "presumptively reasonable fee" and adjusting it based on the above factors produces the same result as applying the traditional "lodestar" analysis in this case.

prevailing rates charged by attorneys practicing in the district where the court sits. *See id.* at 174–76 (discussing forum rule); *see also Bergerson v. N.Y. State Off. of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011); *Ret. Fund of Loc. 1482 Paint & Allied Prod. Mfrs. v. N. Adhesives, Inc.*, No. 19-CV-5609, 2020 WL 6370060, at *4 (E.D.N.Y. May 27, 2020) ("[R]easonable rates for the Eastern District rang[e] from $300 to $450 per hour for partners, $200 to $300 per hour for senior associates, $100 to $200 per hour for junior associates, and $70 to $100 per hour for paralegals."), *report and recommendation adopted*, No. 19-CV-5609, 2020 WL 5587271 (E.D.N.Y. Sept. 17, 2020).

In reviewing a fee application, courts may review the expenditure of hours submitted by counsel, and adjust to a reasonable amount, as determined in light of the particulars of the case. *See Gayle v. Harry's Nurses Registry, Inc.*, No. 07-CV-4672, 2013 WL 5502951, at *7 (E.D.N.Y. Aug. 26, 2013), *report and recommendation adopted*, 2013 WL 5502950 (E.D.N.Y. Sept. 30, 2013) (affirming reduced award of attorneys' fees where the petitioner submitted a sworn declaration from counsel in support). To obtain an award of attorneys' fees, a petitioner must provide contemporaneous time records that support the date work was performed, the nature of the hours expended, and the work done. *See Scott v. City of New York*, 643 F.3d 56, 58–59 (2d. Cir. 2011) ("[A] district court's 'personal observation' of an attorney's work is not by itself a sufficient basis for permitting a deviation and awarding fees in the absence of contemporaneous records."); *Pilitz v. Inc. Village of Freeport*, No. 07-CV-4078, 2011 WL 5825138, at *4 (E.D.N.Y. Nov. 17, 2011) (noting that "the party seeking [attorneys'] fees [must] submit sufficient evidence to support the hours worked and the rates claimed" and "must support its application by providing contemporaneous time records that detail 'for each attorney, the date, the hours expended, and the nature of the work done'" (quoting *N.Y. State Ass'n for*

*Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)).

Under the 2016–2019 CBA, the Collection Policy, and 29 U.S.C. § 1132(g)(2), Petitioner is entitled to reasonable attorneys' fees and costs in a court action to recover delinquent contributions. (Pet. ¶ 24; Pet. Mot. 5); *see also Sahara Constr. Corp.*, 2020 WL 6130673, at *3 (granting attorneys' fees pursuant to a clause in a collective bargaining agreement). The Collection Policy specifies that "[o]nce legal action is commenced, [Respondent] shall also be liable for . . . attorney[s'] fees and costs incurred." (Collection Policy 5, annexed to Pet. as Ex. 3, Docket Entry No. 1-3); *see also Sahara Constr. Corp.*, 2020 WL 6130673, at *3 ("[The respondent] signed the [collective bargaining agreement] . . . , failed to satisfy the [a]ward and failed to oppose the [p]etition. As [the respondent] failed to justify its refusal to abide by the arbitrator's decision, [the] [p]etitioners should be awarded reasonable attorneys' fees and costs.").

Petitioner's request for attorneys' fees is supported by contemporaneous time records specifying "relevant dates, time spent and work done." (Hours Expended by Counsel, annexed to Pet. as Ex. 10, Docket Entry No. 1-10); *see also N.Y. State Ass'n for Retarded Children, Inc.*, 711 F.2d at 1147–48; *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs Loc. 15, 15A, 15C & 15D v. Intercounty Paving Assocs. of N.Y., LLC*, No. 19-CV-733, 2020 WL 6826197, at *7 (E.D.N.Y. Nov. 20, 2020) (awarding attorneys' fees where the plaintiffs "submitted an affidavit from their counsel and contemporaneous time records detailing counsel's work on the case, the date on which the work occurred, and the number of hours expended on such work").

The records reflect 3.2 hours of work, which the Court finds to be reasonable. (Pet. ¶¶ 42–45; Hours Expended by Counsel.) The time expenditure appears reasonable in view of the

13

documentation Petitioner has provided to support the unopposed motion for summary judgment. *See Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Coop. Funds v. Excel Installations, LLC*, No. 19-CV-3012, 2020 WL 429135, at *5 (E.D.N.Y. Jan. 27, 2020) (finding 5.9 hours billed to be reasonable in a motion to confirm ERISA arbitration award); *Finkel*, 2019 WL 3281012, at *2–3 (finding 1.7 hours to be "a reasonable amount of time to have spent in preparation of the petition" to enforce arbitration award).

The records also reflect an hourly rate of $275 for an associate attorney and $120 for a legal assistant. (Pet. ¶¶ 42–45; Hours Expended by Counsel.) The requested hourly rate of $275 is on the higher end of the prevailing rate within this district for associates. *See Trs. of Bldg. Trades Educ. Benefit Fund v. Culver Elec., LLC*, No. 17-CV-3448, 2020 WL 6927618, at *7 (E.D.N.Y. Nov. 3, 2020), *report and recommendation adopted in part*, 2020 WL 6902364 (E.D.N.Y. Nov. 24, 2020) (finding $200 per hour reasonable for associate attorney in ERISA litigation); *Excel Installations, LLC*, 2020 WL 429135, at *5 (reducing first-year associate's rate from $225 to $175 per hour); *Trs. of Leather Goods, Handbags, & Novelty Workers' Union Loc. 1 Joint Ret. Fund v. Cent. Fur Storage Co.*, 18-CV-7224, 2019 WL 3937132, at *11–12 (E.D.N.Y. Aug. 2, 2019) (awarding $250 per hour for senior associate attorney in ERISA matter), *adopted by* 2019 WL 3936676 (E.D.N.Y. Aug. 20, 2019); *Div. 1181 Amalgamated Transit Union—N.Y. Emps.' Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 621–23 (E.D.N.Y. 2017) (finding $200 per hour reasonable for associate attorney in ERISA matter).

Petitioner's counsel, Marimon, is an associate at her law firm and has "handled the prosecution of numerous ERISA collections actions" since 2014, four years prior to the filing of this action. (Pet. ¶ 42.) Marimon has been awarded a rate of $250 per hour for her associate-level work. *See Matter of Arb. Between Finkel & Allstate Elec. Corp.*, No. 18-CV-3798, 2020

14

WL 1864877, at *4 (E.D.N.Y. Apr. 14, 2020) (reducing same attorney's rate from $275 to $250 per hour for her work as an associate); *Trs. of Pavers & Road Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. Genrus Corp.*, No. 18-CV-4232, 2019 WL 4604972, at *8 (E.D.N.Y. Sept. 6, 2019) (awarding same attorney $250 per hour for work as an associate), *report and recommendation adopted*, 2019 WL 4602880 (E.D.N.Y. Sept. 23, 2019); *Finkel v. IAG Elec., Inc.*, No. 19-CV-3075, 2019 WL 3281012, at *2–3 (E.D.N.Y. July 19, 2019) (reducing same attorney's hourly rate from requested $350 to $250); *Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship & Labor Mgmt. Coop. Funds v. CEI Contractors, Inc.*, No. 18-CV-3467, 2019 WL 117603, at *6 (E.D.N.Y. Jan. 7, 2019) (reducing same attorney's hourly rate from $225 to $200 despite her assertion that she had graduated four years earlier and had "handled the prosecution of numerous ERISA collection[] actions"); *Trs. of Loc. 7 Tile Indus. Welfare Fund v. Larsen Marble & Tile, LLC*, No. 18-CV-1025, 2018 WL 6363923, at *6 (E.D.N.Y. Nov. 19, 2018), *report and recommendation adopted as modified*, 2018 WL 6344188 (E.D.N.Y. Dec. 5, 2018) (reducing the hourly rate for the same attorney from $265 to $200 four years after her law school graduation). *But see Excel Installations, LLC*, 2020 WL 429135, at *5 (awarding same attorney $300 per hour "given her position as *partner* and as the most senior attorney on the case"). Thus, the Court awards Petitioner attorneys' fees based on an hourly rate of $250 for Marimon's work.

The requested hourly rate of $120 is also on the higher end of the prevailing rate within this district for legal assistants. *See Matter of Arb. Between Finkel & Allstate Elec. Corp.*, No. 18-CV-3798, 2020 WL 1864877, at *4 (E.D.N.Y. Apr. 14, 2020) (reducing legal assistant's hourly fees from $120 to $90); *Excel Installations, LLC*, 2020 WL 429135, at *5 (awarding $90 per hour for the work of a paralegal); *Larsen Marble & Tile, LLC*, 2018 WL 6363923, at *6

15

(reducing the hourly rate for legal assistants from $115 to $90). Thus, the Court reduces the hourly rate of the legal assistant to $90 per hour.

The Court finds that 3.2 hours is reasonable for the attorneys' time expenditure but reduces Petitioner's counsel's hourly rate from $275 to $250 and reduces the legal assistant's hourly rate from $120 to $90. Accordingly, the Court grants Petitioner's request for attorneys' fees in part and awards Petitioner $752 in attorneys' fees.

### d. Costs

Petitioner requests "$475 in costs arising from the service fee and filing fees." (Pet. Mot. 6; Pet. ¶ 46.)

The Court takes judicial notice of this district's $400 fee to file a petition and awards such to Petitioner. *See LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (noting that courts award "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients" (quoting *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989))); *Resnik v. Coulson*, No. 17-CV-676, 2020 WL 5802362, at *11 (E.D.N.Y. Sept. 28, 2020) (awarding complaint filing fee and fee for leave to appear *pro hac vice* based on judicial notice); *Graduation Sols., LLC v. Acadima, LLC*, No. 17-CV-1342, 2020 WL 1528082, at *4 (D. Conn. Mar. 30, 2020) ("'Costs relating to filing fees, process servers, postage and photocopying are ordinarily recoverable' if they are supported by documentation." (quoting *Teamsters Loc. 814 Welfare Fund v. Dahill Moving 7 Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008)).

Although Petitioner does not provide receipts to substantiate its request for service fees of $75, the Court finds that such amount is reasonable. *See Culver Elec., LLC*, 2020 WL 6927618, at *7 (awarding "$400.00 for a filing fee and $77.75 for a process server fee" in ERISA action);

*Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D v. Ne. Indus. Maint., Inc.*, No. 19-CV-4484, 2020 WL 6437400, at *11 (E.D.N.Y. Sept. 28, 2020) (awarding "costs of $400 in court filing fees and $60 in service of process fees" in ERISA action); *Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Engineers, Loc. 14-14B v. Superior Site Work, Inc.*, No. 15-CV-543, 2017 WL 639248, at *6–8 (E.D.N.Y. Feb. 16, 2017) (awarding $400.00 for filing fee and $95.00 for service of process).

Accordingly, the Court grants Petitioner's request for costs in the amount of $475.

### III. Conclusion

For the foregoing reasons, the Court grants Petitioner's motion to confirm the arbitration award in the amount of $96,721.04, plus interest accrued until entry of judgment, and awards Petitioner $752 in attorneys' fees and $475 in costs for a total damages award of $97,948.04 plus accrued interest. The Court directs Petitioner to mail a copy of this Memorandum and Order to Respondent and directs the Clerk of Court to close the case.

Dated: December 31, 2020
      Brooklyn, New York

SO ORDERED:

        s/ MKB
MARGO K. BRODIE
United States District Judge